UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

HARRY H. KUTNER, JR., individually and on
behalf of all similarly situated Nassau County
residents eligible to bear arms,

                    Plaintiffs,

- against -

COUNTY OF NASSAU, and

BRUCE A. BLAKEMAN, personally and in his
official capacity as Nassau County Executive, and

PATRICK J. RYDER, personally and in his official
capacity as Nassau County Police Commissioner,

                    Defendants.

------------------------------------------------------------X

PLAINTIFF *PRO SE*
ATTORNEY'S AFFIRMATION
IN SUPPORT OF ORDER
TO SHOW CAUSE

CV # 22-07530

AZRACK, J.

LINDSAY, M.J.

        HARRY H. KUTNER, JR., an attorney at law duly admitted to practice in the U.S. District Court for the Eastern District of New York, affirms the truth of the following under the penalties of perjury and FRCP Rule 11:

        1.    I am the plaintiff, and an attorney at law duly admitted to practice in New York State since 1974 and in this court since 1975. Personally and professionally as a member of the Bar of this court, I affirm the truth of the following.

HARRY H. KUTNER, JR.
ATTORNEY-AT-LAW
1325 FRANKLIN AVENUE
SUITE 220
GARDEN CITY, N.Y. 11530
(516) 742-4400

2. This revised and updated affirmation is submitted to record defendants' duplicitous delays since this action was filed as part of a poorly-disguised strategy of delay.

3. This affirmation is based on personal knowledge, defendants' Nassau County Police pistol licensing procedures, my interactions with them since November 15, 2022, and legal research especially the Second Amendment trilogy of *Heller-McDonald-Bruen* together with the later *Hardaway* and *Antonyuk* decisions as set forth in the accompanying Memorandum of Law.

## IMMEDIACY, AND DEFENDANTS' BAD FAITH

4. On January 19, 2023, this Court took the time to address the separate issue of my individual license. The conclusion was that the County would immediately issue me the Full Carry ("FC") license. *No condition was even mentioned by defendants requiring me to go through the full licensing application process* (more below).

Apparently in light of every action by defendants since, they were unhappy with their attorney's in-court resolution.

5. It must be remembered that the court conference occurred after the January 12th hastily-called "summit" at the County Attorney's Office, short-scheduled that morning by a telephone request from none other

than <u>the</u> County Attorney himself, the Hon. Thomas A. Adams, wherein they proposed my immediate receipt of a FC ("Go over to HQ, right now, and they'll give you the FC license" - handwritten note by Judge Adams still in my possession) in return for the discontinuance of the class action. They did <u>not</u> propose my dropping the suit in return for my being " . . . *free to apply for a full carry permit*" [Mr. Reissman's claim in his 01-30-23 letter's (ll. 9-10) revisionist recollection of the meeting at which he was not a participant], but offered an on-the-spot walk-in/walk-out FC license. So they had-have the power, and their later concocted position "you can apply" is false.

6. After the January 19th court appearance, I proceeded directly to defendants' Pistol License Section ("PLS"), where I spoke to a civilian employee and later Sgt. Russell who related they knew nothing about it. That was the first inkling that defendants were countermanding their attorney's court concession.

7. Over the next eight days (01-19 to 01-27), I tried to get the County to honor its word. No luck.

8. Finally on January 27th, *mentioned for the very first time by defendants*, Mr. Reissman told me in a telephone call that I had to "file a new application for a full carry without any guaranty that it would be issued. They'll consider it !" As a mild understatement, I was angry with defendants'

Page -3-

duplicity, and told Mr. Reissman that he was not to be faulted but his clients were "moving the goalposts." Instead of conceding that was what had occurred, he insisted that had been his position before this Court on the 19th. When asked if he realized how intelligence-insulting his change of position was, that I would drop the lawsuit for the grand prize of being allowed to do something I already had the absolute right to do, i.e., to apply for the F.C. license without any guaranty of its receipt, he was understandably mute.

### FC IS NOW CALLED CC

9. Recently in Mr. Reissman's February 13th note to me, he provided a copy of the NCPD's internal computer memo of my early morning appearance. In the note, an incorrect nitpicking (but false) disparaging remark about my terminology was made that I was mistaken in referring to the unrestricted license I have been seeking as a "Civilian Full Carry" which they "no longer issue but now (called) Concealed Carry license. Excuse me, but they do not even read their own application which lists <u>neither</u> as a Class [Bates, 005, in top box-area to be checked off, neither *term* available]. Also their position totally ignores *Bruen*.

ARRY H. KUTNER, JR.
ATTORNEY-AT-LAW
3220 FRANKLIN AVENUE
SUITE 225
GARDEN CITY, N.Y. 11530
(516) 741-1400

10. However defendants' entry reveals two conclusions: that defendants' mindset is to nitpick and deny my application for any-no reason, and they lack integrity.

## WHAT IS INVOLVED IN FULL APPLICATION PROCESS ("FAP")

11. The FAP is not a "check boxes, fill-in, one page application as to personal information, no criminal history, no mental illness." That *is* the basic process in forty-four states. But not anti-Second Amendment New York State, and even our state's conflict with the Second Amendment is expanded ten-fold by Nassau County's hubristic add-on hurdles, none of which were even part of the questionable at best new state law.

12. Unlike for example Bucks County, Pennsylvania, neither such county nor state being even remotely akin to Kevin Costner's "Yellowstone" Montana as far as lifestyle, politics nor gun rights, where a license application is processed within thirty minutes, *Nassau County's FAP takes fourteen to sixteen months !* Heck, they won't even give the applicant an appointment for a mandatory fingerprinting for 11-12 months, and then delay the process even further with an interview, investigation of all social media accounts (including passwords), etc., etc., in an illicit personal information search.

ARRY H. KUTNER, JR.
ATTORNEY-AT-LAW
1825 FRANKLIN AVENUE
SUITE 825
GARDEN CITY, N.Y. 11530
(516) 741-1400

13. But there is more, much, much, much more to the Nassau County-only FAP add-ons. The applicant must also obtain recommendation letters from four people, again tagged with restrictions not in the New York Legislature's passed P.L. Article 400, as they must be unrelated to the applicant and to any of the other four people either by blood or marriage, no cohabitants, etc., etc.

14. Then there is the required urinalysis, itself a Fourth Amendment violation if not held to be inherently consented to by the nature of the application (gun license absolutely not inherent). It must be obtained within days of the application, and also is not permissible under *Bruen* nor mandated by P.L. Article 400.

15. And there is much, much more, all set up to delay the process as long as possible.

16. Thus, Mr. Reissman's suggestion that the January 19th resolution was subject to my being allowed to do something I already had, an "FAP with no guaranty," if agreed by me, would have been grounds to declare me unable to wander unsupervised out of my house no less practice law.

17. The above ludicrous history can be reduced to two choices: defendants' agreeing to issue the FC license or issuance of the Order

to Show Cause seeking a TRO-PI and thereby creating a full record.

18. It is submitted that defendants' delay strategy should be ended.

19. The remainder of this Affirmation will provide the overall factual background.

## GENESIS

20. This action was compelled by defendants' denial of my application for a "Business" pistol license renewal on November 15, 2022, a license held by me, unchanged, for approximately 32 years. My exact date of first issuance is approximate since my "Pistol License" office file was lost when I moved two years ago from my 46 year-long Mineola office. Based on the fact that I received the pistol license just after filing a 1990 federal class action (assigned to Hon. Thomas C. Platt) involving organized crime individuals who had reputedly executed a cooperating witness, Steve Terry in the Cross Island Parkway Marina parking lot only several years before, involving the same bank minority-target-class mortgage fraud-scam (but for only 1% of the amount involved in the 1990 newer version), obtaining the pistol license was a more than prudent step.

21. From 1970-72, I was in the U.S. Marine Corps as a counterintelligence specialist. As with all Marines, I was trained in the use of firearms (short and long) and other weapons (hand-to-hand and explosives) and was required to qualify annually.

22. Upon my Honorable Discharge, I was hired by the New York State Parkway Police, assigned to Southern (posted near this Courthouse' location), Northern, Meadowbrook and Wantagh State Parkways, and in the summers because of my low seniority, at Jones Beach State Park. Again, I was tested-certified in the use of firearms, in this case only of pistols and a shotgun, and carried a pistol off-duty. I resigned from the Police on May 14, 1974, the day I was sworn in as an attorney in New York's Second Department.

23. From 1974 to 1990, I had no pistol license of my own choice. Since 1990, I have always been licensed.

24. My last previous pistol license renewal was in 2012 expiring in 2022.

25. During the entire 32 years, I have always had a "Business" carry license, the highest level issued by Nassau County under the now-

declared unconstitutional New York State licensing scheme except for retired police officers who are issued unrestricted "Full Carry" licenses.

26. When I re-applied on November 15, 2022 pursuant to defendants' specific "Renewal" instructions [Bates 010-011], through the "Letter of Necessity" with its accompanying proof of residency, work location, mandated two months bank account statements, and federal-state tax returns, defendants' Police Pistol License Bureau denied me because "the bank statements did not establish cash deposits" and re-issued the license but not the 32 year-long "Business" carry, instead handing me the most restrictive, least usable "Target/Hunting" license [Bates 065].

## NEED FOR TRO-PI

27. Before nutshell-ing the constitutional deficiencies of the defendants' pistol licensing procedure, the circumstances supporting a TRO-PI ordering defendants to issue me a constitutionally-mandated "Full Carry" license must be detailed as per FRCP 65(b).

28. I am 75 years old, and the strength-athleticism of my youth together with the in retrospect not quite formidable but certainly higher level of self-protective ability, have diminished. Further complicating my situation is a heart condition that lowers my stamina and strength.

Page -9-

Thus more reliance on a personal weapon is understandably necessary.

29. "Class action" - from my class action experience as a plaintiff's attorney, it most likely will last years, and at my age could even survive me. Thus unless this Court issues a preliminary injunction ordering the defendants to *pendente lite* issue me a "Full Carry" *Bruen*-compliant pistol license, I will be deprived of its use-protection during my ever-increasingly-most-endangered years.

30. Besides the 1990 class action O.C.-involved case, a second circumstance involves yet another O.C. case I just tried against the Bonnanos' reputed former underboss, Nicky ("Fat Nicky") Santora's son-in-law in which the jury awarded $2.951 million dollars. As an intentional tort (attempted murder), the verdict is not covered by insurance and thus his personal assets are in jeopardy. As the trial date approached, he began making inquiries about my client and me, seeking information to locate us and learn our routines. Besides carrying a gun, our home security system was immediately upgraded as a former FBI agent (familiar to this Court) and NCPD Special Investigations Squad all agreed with my assessment and concern.

The post-verdict motions on that case are scheduled for briefing with entry of judgment to follow, thus the concern continues to grow.

31. Based on the foregoing incontrovertible facts establishing that I was appropriately licensed until renewal when the defendants lowered my License Class level, and that the former category of license, "Business Carry" no longer exists by virtue of *Bruen* (all licenses are now required to be "Full Carry" without restriction), plus my "need" (although such consideration is now *Bruen*-moot) to carry a gun, it is submitted that the TRO-PI should be ordered. These circumstances verily define "immediate danger" and "chance of irreparable injury" by my being denied the possibility of an adequate self-defense. It would also be a shame if the co-equal reason for my carrying a gun, namely "defense of others" in case a dire situation necessitating such an intervention occurs in my presence (a continuation of my character trait that led me to become a police officer in the '70(s)] were to occur and I not be able to help some unfortunate victim.

### DEFENDANTS' ALLEGED CONSPIRACY - POLICY TO DENY ALL ATTORNEYS "BUSINESS" CARRY LICENSES

32. This suit was fully drafted and ready for filing on Friday, December 2nd. Before its filing, I attended an annual luncheon of the Nassau County Criminal Courts Bar Association's Past Presidents. Someone mentioned denial of one the Past President's renewal of his "Business" carry license, to which another remarked that the NCPD had begun a policy years ago to deny all attorneys "Business" licenses whether renewals or first time applications. Days later, at an American Inns of Court (Theodore Roosevelt

LARRY H. KUTNER, JR.
ATTORNEY-AT-LAW
1305 FRANKLIN AVENUE
SUITE 255
GARDEN CITY, N.Y. 11580
(516) 742-1400

Chapter) CLE program on the Second Amendment, the same policy was again coincidentally mentioned.

33. That assertion will be investigated more fully during discovery herein but it surely explains why other attorneys and I were denied and/or downgraded.

34. If such a policy is found to exist, it would constitute textbook 42-1983 civil rights and 42-1985 conspiracy claims by a plaintiff sub-class against the police brass who ordered it plus the rank and file who actually meted it out. Superficially based on the legendary near-universal antipathy by police against attorneys generally and criminal defense attorneys especially, the policy's existence is credible and highly probable. Its accuracy awaits notices in-through the Bar Associations and perhaps New York State's Office of Court Administration by this Court's order during discovery (seeking their data on Nassau County-base attorneys who had to change their N.Y. State O.C.A.-issued attorney I.D.(s) to remove the "Firearm" red-letter endorsement).

## MERITS OF UNDERLYING ACTION

35. Defendants continue to maintain their constitutionally-violative-backwards "proper cause" system of pistol licensing, also labelled a "may issue" or "presumed ineligible" approach as set forth in New York's pre-

*Bruen* version of Penal Law § 400.00, declared unconstitutional therein, *Id.*, at 142 S. Ct. 2117 and 2156.

36. Defendants' denial of my renewal application, for a license held without the slightest hiccup for 32 years, based on my inability to show "proper cause - large cash deposits," cannot be justified by any stretch of imagination nor legal contortion of *Bruen*.

37. This class action seeks a declaration of the undeniably obvious: A) that defendants' system of requiring pistol license applicants to demonstrate a "special need" to receive a license is unconstitutional, and B) that defendants' gradation of various levels of "gun carrying" licenses to be allowed by them is unconstitutional, and C) that only a "Full Carry" license, i.e., one without limitation, complies with *Heller-McDonald-Bruen*, and D) that defendants' imposition of hurdles and delay to discourage-limit the numbers of residents exercising their Second Amendment right to possess-carry is unconstitutional and should be time-limited to a reasonably short period, and F) that defendants' requiring disclosure of confidential tax returns and bank statements are now *Bruen*-declared to be irrelevant, cannot be used in the licensing system, <u>and</u> are violations of confidentiality-privacy laws.

## CONCLUSION

38. It is hard to conceive of a more indefensible fact pattern for defendants to justify in denying renewal, even without applying *Bruen*: a 32-year license, unblemished, held by a 75 year old U.S. Marine, former state police officer (statewide jurisdiction), respected trial attorney who counsels-teaches younger attorneys such as through the Theodore Roosevelt Inns of Court, and a grandfather active in community affairs.

39. Plaintiff's denial inarguably proves defendants' conspiracy (plaintiffs' Third Claim, pp. 18-19) to disobey *Heller-McDonald-Bruen*: one need not be an attorney to read *Bruen*'s explicit scrapping of defendants' "proper cause" - special need system for granting a pistol license. Since defendants act like *Bruen* doesn't exist, it is highly likely that they held more than several meetings locally, and also with *Bruen*-denying officials such as the State Attorney General and other law enforcement agencies (NYSP and NYPD especially), and after those meetings decided to stubbornly continue to apply the *Bruen*-declared unconstitutional "special need" criteria.

40. The general citizenry's Second Amendment right is continuing to be violated because they do not know any better, i.e., they are unaware they can challenge defendants' policy. But then plaintiff walked in and defendants refused to renew his license citing the very "proper cause"- special need system just condemned by *Bruen*.

41. Only one conclusion is credible: that defendants, likely due to a political calculus, decided their electoral prospects were more favorable by disobeying *Bruen* than following the "Law." If so, it is a breach of their oaths of office <u>and</u> our country's bedrock system of law. An alternate possibility to a knowing conspiracy to disobey the law, would have to ascribe myopia or ignorance to defendants, but since *Bruen* is so blunt in its specific condemnation of Nassau County's New York "proper cause" - special need approach, neither of those excuses hold a scintialla of credibility.

42. When the possibility of a pre-*Bruen* instigated systematic denial of all attorneys is considered (to be explored in discovery), defendants' expanding potential liability is understatedly interesting.

43. In this time when violent crime is exploding, it is particularly unacceptable that my Second Amendment right to carry has been spontaneously snatched away leaving me, my family, and those nearby when I am in public, all defenseless.

44. There is no other available adequate remedy at law or in equity.

45. No previous application has been made for the relief sought herein.

46. It is respectfully submitted that restoration of my license on a *Bruen* "Full Carry" basis, *pendite lite*, is appropriate and necessary.

WHEREFORE, it is respectfully requested that this Court order defendants to re-issue the pistol license as an unrestricted "Full Carry" license during the pendency of the class action, and for any such other and further steps, provisions, and relief as would be just, equitable, and proper.

Dated: Garden City, New York
February 14, 2023

HARRY H. KUTNER, JR. (K-0497)

HARRY H. KUTNER, JR.
ATTORNEY AT LAW
1025 FRANKLIN AVENUE
SUITE 225
GARDEN CITY, N.Y. 11530
(516) 741-3400